# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTINE THORNTON,** | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) Civil Action Number<br>) **2:16-cv-01986-AKK**<br>) |
| **BAYERISCHE MOTOREN**<br>**WERKE AG, et al.,** | )<br>)<br>) |
| **Defendants.** | ) |

## **MEMORANDUM OPINION AND ORDER**

This action arises from injuries Christine Thornton suffered in an automobile collision when the driver's side airbag deployed in her 2004 BMW 330i, which allegedly was manufactured and sold by Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), a German company, and its indirect subsidiary, BMW of North America, LLC ("BMW NA"). Doc. 26. After a transfer to a Multidistrict Litigation Panel in the Southern District of Florida, doc. 12, this case returned to the court by a conditional remand on October 30, 2018, doc. 13. Thereafter, Thornton filed an Amended Complaint, doc. 26, in which she named BMW AG as a defendant. BMW AG has moved to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, doc. 33. For the reasons explained below, particularly the absence of evidence showing that Thornton's claims arise from or relate to BMW AG's contacts with Alabama or

that BMW AG purposely availed itself of the privilege of doing business in Alabama, the motion is due to be granted.[1]

I. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(2) authorizes a motion to dismiss for lack of personal jurisdiction. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The court must accept the plaintiff's allegations as true unless a defendant challenges jurisdiction and offers evidence to contradict the plaintiff's allegations. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). If the defendant challenges personal jurisdiction with evidence supporting its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [the defendant's] affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels,*

---

[1] Also before the court is BMW AG's motion to extend the page limitation for its reply brief, doc. 37, which it filed after business hours on the deadline for its brief and in conjunction with the brief that exceeds the court's page limits. To support the request for additional pages, BMW AG contends that Thornton raised a new purported basis for personal jurisdiction in her response to the motion to dismiss that she did not plead in her complaint. Doc. 37 at 1-2. Thornton's response brief does raise a new issue that BMW AG could not address in its initial brief. But, surely BMW AG knew that well before it filed its non-conforming brief in this case, and could have moved for the extension in advance. By waiting until after the fact to file its motion, BMW AG basically opted to disregard the page limits and essentially granted itself an extension. Although the court will grant the motion, the court places the remaining parties on notice that it frowns on such tactics and will deny any subsequent motions filed on the eve of a deadline or after the fact.

*Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). To meet that burden, the plaintiff must provide sufficient evidence concerning the nonresident defendant's contacts with the forum to withstand a motion for a directed verdict. *Id.* at 1268-69. The court must view all of the jurisdictional evidence in the light most favorable to the plaintiff. *Id.* at 1269.

## II. BRIEF FACTUAL AND PROCEDURAL BACKGROUND

Thornton sustained injuries in a car accident in her 2004 BMW 330i when the driver-side front "airbag inflator exploded internally with excessive force, resulting in an overly aggressive deployment of the airbag." Doc. 26 at 1, 6-7. Prior to the accident, BMW issued a recall for Thornton's vehicle based on defects in the passenger-side front airbag, but it did not issue a recall for the driver-side airbag until several months after the accident. *Id.* at 7. Thornton asserts claims against BMW NA and BMW AG for negligence and wantonness based on alleged defects in the design and manufacturing of the frontal airbag system in her vehicle, a claim under the Alabama Extended Manufacturer's Liability Doctrine, and claims based on an alleged failure to warn and breach of implied warranty. *Id.* at 18-27.

In the Amended Complaint, Thornton acknowledges that BMW AG "is not registered to do business in the State of Alabama." Doc. 26 at 3. Nonetheless, she asserts that the court may assert personal jurisdiction over BMW AG for multiple

3

reasons.² BMW AG, a German company headquartered in Germany, maintains that it has no contacts with the state of Alabama, does not sell vehicles to customers in the state of Alabama, and does not conduct any business in Alabama. Doc. 33-1 at 3-6. And, according to BMW AG, BMW NA, an indirect subsidiary, is the exclusive distributor for new vehicles in the United States. *Id.* Therefore, BMW AG has moved for dismissal based on lack of personal jurisdiction.

## III. ANALYSIS

"A federal court sitting in diversity may exercise personal jurisdiction [over a nonresident defendant] to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier*, 288 F.3d at 1269. Under its long-arm statute, "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing *Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993)); *see also* Ala. R. Civ. P. 4.2(b). The Due Process Clause allows for two types of personal jurisdiction—"general" and

---

² Thornton alleges that BMW AG "regularly transacted, engaged in and derived revenue from business operations, including the sale of automotive products and related components, in Alabama; [] contracted to supply automotive products and related components in Alabama; [] caused injuries and damages to [Thornton] due to acts and/or omissions which occurred in whole or in part within Alabama; and [] manufactured automotive products and components thereto, and placed those products and components into the stream of commerce, with actual or constructive knowledge that those automotive products and related components would eventually be found in Alabama." Doc. 26 at 5-6.

"specific" personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). For either general or specific jurisdiction to comport with due process, the defendant must have certain minimum contacts with the state, and the "minimum contacts inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." *Id.*

At issue here is whether the court may exercise specific jurisdiction over BMW AG. *See* doc. 36 at 6-7. Specific jurisdiction is present only if an action "aris[es] out of or relat[es] to the defendant's contact with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S.Ct. 1773, 1780 (2017); *see also Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). To determine whether the exercise of specific jurisdiction comports with the Due Process Clause, this court must apply a three-part test examining whether: (1) "the plaintiff[] ha[s] established that [her] claims 'arise out of or relate to' at least one of the defendant's contacts with the forum;" (2) "the plaintiff[] [has] demonstrated that the defendant 'purposefully availed' itself of the privilege of

5

conducting activities within the forum state;" and (3) "the defendant has 'made a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Waite*, 901 F.3d at 1313 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)) (alteration in original omitted).

The first prong of the analysis requires the court to focus on the contacts "the defendant [itself] creates with the forum State" and "not the plaintiff['s] contacts with the forum or even the defendant's contacts with the plaintiff[]." *Waite*, 901 F.3d at 1316 (citing *Walden,* 571 U.S. at 284). In other words, the court's "inquiry must focus on the direct causal relationship among 'the defendant, the forum, and the litigation.'" *Fraser v. Smith,* 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984)). And, in this Circuit, "a tort 'arise[s] out of or relate[s] to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Waite*, 901 F.3d at 1314 (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009)) (alterations in original).[3]

---

[3] The Eleventh Circuit noted that although the Supreme Court has "imposed no explicit but-for causation requirement in either *Walden* or *Bristol-Myers Squibb*," the Court has also not "reject[ed] such a requirement." *Waite*, 901 F.3d at 1315. Consequently, the Circuit held that it cannot disregard binding case law that is "closely on point and has been only *weakened*, rather than directly overruled, by the Supreme Court." *Id.* (emphasis in original). *See Walden v. Fiore*, 571 U.S. 277, 278 (2014) (noting that the "proper question [for specific jurisdiction] is whether the defendant's conduct connects him to the forum in a meaningful way"); *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1776 (finding that non-California residents failed to allege specific jurisdiction

6

To satisfy the second prong, a plaintiff must show that the defendant "'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Diamond Crystal Brands,* 593 F.3d at 1267. The plaintiff may establish purposeful availment by demonstrating facts sufficient to show that the defendant "deliberately engaged in significant activities within [the forum state] or created continuing obligations with residents of that forum." *Id.* at 1268. "[P]urposeful availment may be demonstrated if the defendant who placed [an] item into the stream of commerce engaged in additional conduct, such as designing the product for the forum state; advertising or marketing in that state; or establishing channels for providing advice to that state's residents." *Avendano-Bautista v. Kimbell Gin Machinery Co.,* 2017 WL 6003080, at *2 (S.D. Ga. Dec. 4, 2017) (citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 112 (1987) (plurality op.)). In other words, the defendant's contacts with the forum state "cannot merely be random, fortuitous, or attenuated." *Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 875 (11th Cir. 2018) (internal citations omitted).

Finally, if the plaintiff satisfies the first two prongs, then in the third prong's due process analysis, the court examines the "burden on [the defendant], the

---

over a company because the company did not develop, create a marketing strategy, manufacture, or work on regulatory approval for the drug in California).

interests of the forum state, and [the plaintiff's] interest in obtaining relief." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980); *see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1267 (11th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

With these principles in mind, the court turns to the parties' respective contentions regarding BMW AG's contacts with the forum.

### A. Whether Thornton Established that her Claims Arise from or Relate to BMW AG's Contacts with Alabama and that BMW AG Purposely Availed Itself of the Privilege of Conducting Business in Alabama

BMW AG asserts that it "has no contacts whatsoever with Alabama," and, therefore, Thornton cannot establish that her claims arise out of or relate to a contact between it and Alabama or that it purposely availed itself of the privilege of doing business in the state. Doc. 33 at 13-23. To support its position, BMW AG submitted a declaration from two of its in-house counsel stating that BMW AG is a German company that designs and manufactures vehicles, including the subject model 2004 BMW 330i series, "principally in Germany, and does not engage in such activities in the State of Alabama . . . [or] design vehicles specifically for consumers in Alabama." Doc. 33-1 at 3. The declaration also establishes that BMW AG is an indirect parent company of BMW NA, a Delaware company with its principal place of business in New Jersey. *Id.* at 3-4. According

to BMW AG, "BMW NA is the exclusive United States distributor for new BMW brand vehicles to the public in the United States," and "BMW AG does not control the distribution of BMW vehicles in the United States, including in the State of Alabama." *Id.* at 4. And, "[o]nce BMW NA purchased the subject vehicle from BMW AG in Germany, BMW AG no longer had any ownership or control over the vehicle." *Id.* Finally, the declaration states that BMW AG does not make direct sales of BMW vehicles in Alabama or distribute BMW vehicles to dealers or individuals in Alabama, and that BMW AG does not maintain a sales force in Alabama or solicit business in Alabama. *Id.* at 5.

This evidence directly contradicts Thornton's jurisdictional allegations, *see* doc. 26 at 5-6, and shifts the burden to Thornton to produce evidence supporting jurisdiction, *Meier*, 288 F.3d at 1269. For her part, Thornton contends in part that BMW AG does business in the United States, including Alabama, as BMW Group, and that BMW Group "has placed vehicles that it designs, tests, and manufactures into the 'stream of commerce' in Alabama through its relationship with its five BMW dealers in Alabama," and has marketed and sold vehicles in Alabama. Doc. 36 at 1-5, 7-8. But, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Woodson*, 444 U.S. at 295. In that respect, Thornton's contention that BMW AG placed vehicles in the stream of commerce knowing that they "would eventually be found in Alabama,"

9

doc. 26 at 5-6, is unavailing. After all, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi Metal Indus. Co.*, 480 U.S. at 112 (plurality op.).

As for Thornton's contention that BMW AG does business in the United States as BMW Group, the evidence Thornton cites does not establish this alleged fact. While Thornton correctly points out that the Chairman of the Board of Management of BMW AG also holds himself out as the Chairman of the Supervisory Board for BMW Group, *see* docs. 36-1 at 2; 36-3 at 5; 36-8 at 2, holding the same title for these two entities does not establish that BMW AG actually does business as BMW Group. Moreover, Thornton's evidence does not indicate that BMW Group is a separate legal entity, but suggests that BMW Group is a name used for the group of companies affiliated with BMW AG and its BMW, Rolls-Royce, and MINI brands, including BMW AG's subsidiaries. *See* docs. 36-3 at 17-24; 36-4 at 3; 36-6 at 8 (noting that BMW NA, an indirect subsidiary of BMW AG, is a "BMW Group Company").

But, even if BMW AG does business as BMW Group, Thornton has not offered evidence showing that BMW Group or BMW AG specifically targets Alabama for business, or deliberately engaged in significant activities within the state. Indeed, none of the documents Thornton offered even mention Alabama,

other than to state that information regarding the airbag recall would be mailed to customers in the state, doc. 36-6 at 2. *See* docs. 36-1; 36-2; 36-3; 36-4; 36-5; 36-6; 36-7; 36-8. And, while Thornton has offered evidence that BMW AG targets the United States market for sales of its vehicles, *see* docs. 36-1 at 3-8; 36-2 at 6; 36-8 at 6, that is not sufficient to demonstrate minimum contacts with Alabama, or to show that BMW AG purposely availed itself of the privilege of doing business in Alabama, *see J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 885-86 (2011) (plurality op). Perhaps in recognition of this fact, Thornton contends also that BMW AG, as BMW Group, specifically targets the state of Alabama because it "has established relationships with at least five BMW dealerships." Doc. 36 at 3, 7-8. This contention is conclusory, however, because Thornton has not cited any evidence to support it or provided any specific facts about the nature and extent of the alleged relationships. *See id.* Thus, in light of BMW AG's evidence that it does not maintain a sales force in Alabama or distribute BMW vehicles to dealers in Alabama, doc. 33-1 at 5, Thornton's unsupported and conclusory contention fails to establish minimum contacts between BMW AG and Alabama or purposeful availment.

As her final basis to show jurisdiction, Thornton contends that BMW AG exerts complete control over BMW NA, "made the decision as to how and when to issue a recall on the Subject Vehicle, thus exerting continued control over all of the

11

vehicles subject to the recall in the State of Alabama." Doc. 36 at 7 (emphasis in original omitted). This contention also does not establish that Thornton's claims arise out of or relate to any contact between BMW AG and Alabama. Indeed, as this court recently found, "a 'duty to warn' cannot be a basis for specific jurisdiction because 'such a result would impermissibly allow the plaintiffs' choices—rather than defendant's contacts to drive the jurisdictional analysis.'" *Tomas v. Bayerische Motoren Werke AG*, Case No. 5:17-cv-01664-AKK, 2018 WL 6181172, at *3 (N.D. Ala. Nov. 27, 2018) (quoting *Waite*, 901 F.3d at 1316).

To summarize, "BMW AG's target of the broader United States market, the notices of recall it sent [to customers in Alabama], and [Thornton's] unilateral decision to purchase the vehicle in Alabama fail to demonstrate BMW AG's connection to Alabama in a 'meaningful way.'" *Tomas*, 2018 WL 6181172, at *3 (citing *Walden,* 571 U.S. at 278). Therefore, in the absence of evidence that Thornton's injuries occurred as a result of BMW AG's contacts with Alabama or that BMW AG purposely availed itself of the privilege of doing business in Alabama, Thornton fails to satisfy the first and second prongs of the constitutional inquiry for specific jurisdiction. As a result, BMW AG is not subject to specific jurisdiction in Alabama. *See Tomas*, 2018 WL 6181172, at *4.

## B. Whether the Court can Exercise Personal Jurisdiction Over BMW AG by Piercing the Corporate Veil

Even in the absence of the necessary contacts, Thornton contends that the court may still exercise personal jurisdiction over BMW AG because it is the alter ego of BMW NA. Doc. 36 at 4-5, 10-13.[4] The Eleventh Circuit recognizes that personal jurisdiction may be based on an alter-ego theory when a subsidiary's "separate corporate status is formal only" and has no "semblance of individual identity." *Meier*, 288 F.3d at 1272; *see also Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293-94 (11th Cir. 2000). However, courts do not exercise the power to pierce the corporate veil lightly. *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1304 (S.D. Ala. 2012) (citing *Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1273 (Ala. Civ. App. 2001)). And, "courts are reluctant to impute the activities of the subsidiary to the parent when some semblance of independence has been maintained." *Kozial v. Bombarider-Rotax GMBH*, 129 F. App'x 543, 547 (11th Cir. 2005) (citing *Consolidated Dev. Corp.*, 216 F.3d at 1293-94).[5]

---

[4] Thornton did not plead this alter-ego theory of personal jurisdiction in her complaint, *see* doc. 26, and cannot amend her pleadings through argument in a brief, *see Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (citation omitted). Still, because the court must "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), the court addresses the alter-ego theory to determine if it would be futile for Thornton to amend her complaint to plead the theory.

[5] Under Alabama law, a plaintiff must show the following three elements to justify piercing the corporate veil under the alter ego theory:

The record here establishes that BMW AG and BMW NA are separate legal entities that maintain distinct policies and procedures for their respective operations, four intermediate companies separate BMW AG and BMW NA, and BMW AG does not directly own any BMW NA stock. Doc. 33-1 at 3-4. Thornton does not directly dispute this evidence. *See* doc. 36. Nevertheless, Thornton argues that BMW NA is the alter ego of BMW AG because BMW AG conducts business as the BMW Group, and "[t]he conduct of such business requires the exercise of significant control over its subsidiaries in the United States, including [BMW NA] . . . ." *Id.* at 12. As discussed above, however, the evidence submitted by Thornton does not establish that BMW AG does business as BMW Group, much less that by purportedly doing so, BMW AG has complete control and domination over BMW NA's finances, policies, and business practices. *See* pp. 10-11, *supra*.

---

1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will or existence of its own;
2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of the control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
3) The misuse of this control proximately cause[d] the harm or unjust loss complained of.

*First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334-35 (Ala. 1991).

To support her alter ego theory, Thornton also points to public statements from BMW AG's directors, which purportedly disregard the corporate form of BMW NA and discuss the business of BMW NA "as if it is merely a part of [the] business of BMW Group, which is BMW AG itself," and BMW AG's financial interest in BMW NA. Doc. 36 at 12-13. This contention overlooks that, "mere control and dominion does not suffice to trigger alter ego status." *Continental Motors, Inc.*, 882 F. Supp. 2d at 1304; *see also Messick v. Moring*, 514 So. 2d 892, 895 (Ala. 1987). In fact, "Alabama law is clear that the corporate veil cannot be pierced unless the dominant corporation (a) misused that control, and (b) proximately caused harm to the plaintiff through such misuse." *Continental Motors, Inc.*, 882 F. Supp. 2d at 1304 (citing *Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 930 (Ala. 2012); *Kwick Set Components, Inc. v. Davidson Indus., Inc.*, 411 So. 2d 134, 137 (Ala. 1982)). There is no evidence before the court to suggest that BMW AG misused its purported control over BMW NA. *See* doc. 36. As a result, Thornton has not presented sufficient evidence to justify piercing the corporate veil between BMW AG and BMW NA.

## IV. CONCLUSION

Thornton has not established that her claims arise from or relate to a contact between BMW AG and Alabama, that BMW AG purposely availed itself of the privilege of conducting business in Alabama, or that BMW NA is the alter ego of

BMW AG. Thus, Thornton has not established that the court may exercise personal jurisdiction over BMW AG. As a result, BMW AG's motion to dismiss, doc. 33, is **GRANTED**. BMW AG's motion to extend, doc. 37, is **GRANTED**. The claims against BMW AG are **DISMISSED WITHOUT PREJUDICE**.

**DONE** the 13th day of February, 2020.

                                         **ABDUL K. KALLON**
                                      UNITED STATES DISTRICT JUDGE